UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ALICIA LIPSCOMB,

       Plaintiff,

v.                                 CASE NO. 3:18-cv-344-J-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her applications for a period of disability, disability insurance

benefits ("DIB"), and supplemental security income ("SSI"). Following an

administrative hearing held on July 12, 2017, the assigned Administrative Law

Judge ("ALJ") issued a decision, finding Plaintiff not disabled from February 19,

2016, the amended alleged disability onset date, through July 28, 2017, the date

of the decision.[2] (Tr. 12-67.) Based on a review of the record, the briefs, and the

applicable law, the Commissioner's decision is **REVERSED and REMANDED**.

---

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge. (Doc. 9.)

[2] Plaintiff had to establish disability on or before June 30, 2017, her date last
insured, in order to be entitled to a period of disability and DIB. (Tr. 16.)

## I.     Standard

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1995); *Barnes v. Sullivan*, 932 F.2d 1356, 1458 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff argues that a remand is necessary because the ALJ erred by failing to give proper reasons, supported by substantial evidence, for rejecting her subjective complaints and the opinions of the consultative psychologist, Darrin Kirkendall, Ph.D., and the treating source, Heather Gall, ARNP.  Defendant responds that the ALJ properly evaluated Plaintiff's subjective complaints and the medical evidence.

### A.    Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When a treating physician's opinion does not warrant controlling weight, the ALJ

must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam), 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-cv-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008). Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability

evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. May 2, 2008)

(per curiam); *see also* SSR 96-6p (stating that the ALJ must treat the findings of

State agency medical consultants as expert opinion evidence of non-examining

sources). While the ALJ is not bound by the findings of non-examining

physicians, the ALJ may not ignore these opinions and must explain the weight

given to them in his decision. SSR 96-6p.

When a claimant seeks to establish disability through her own testimony of

pain or other subjective symptoms, the Eleventh Circuit's three-part "pain

standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per

curiam). "If the ALJ decides not to credit such testimony, he must articulate

explicit and adequate reasons for doing so." *Id*.

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her pain is disabling through objective

medical evidence from an acceptable medical source that shows a medical

impairment that could reasonably be expected to produce the pain or other

symptoms, pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about

the intensity, persistence, and functionally limiting effects of pain or other

symptoms must be considered in addition to the medical signs and laboratory

findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561; *see also* SSR

16-3p[3] (stating that after the ALJ finds a medically determinable impairment

exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the

individual's symptoms" to determine "the extent to which an individual's

symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an
> individual's symptoms, [the ALJ must] examine the entire case
> record, including the objective medical evidence; an individual's
> statements about the intensity, persistence, and limiting effects of
> symptoms; statements and other information provided by medical
> sources and other persons; and any other relevant evidence in the
> individual's case record.
> . . .
> In evaluating an individual's symptoms, it is not sufficient for our
> adjudicators to make a single, conclusory statement that "the
> individual's statements about his or her symptoms have been
> considered" or that "the statements about the individual's symptoms
> are (or are not) supported or consistent." It is also not enough for
> our adjudicators simply to recite the factors described in the
> regulations for evaluating symptoms.[4] The determination or decision

---

[3] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

[4] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping

must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.
. . .
In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms

---

on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.*  In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her stressors;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

### B.  The ALJ's Decision

At step two of the five-step sequential evaluation process, the ALJ found that Plaintiff had the following severe impairments: lupus, obesity, post-traumatic stress disorder ("PTSD"), lumbar disc disease, cervicalgia, fibromyalgia, anxiety disorder, depressive disorder, bursitis, gastroesophageal reflux disease

("GERD"), and hiatal hernia.  (Tr. 18.)  Then, the ALJ found that Plaintiff had the

residual functional capacity ("RFC") to perform sedentary work with the following

limitations:

> [T]he ability to lift and carry 10 pounds occasionally and 5 pounds
> frequently; sit for up to 6 hours, stand for up to 2 hours, and walk for
> up to 2 hours; push and pull as much as lift and carry; occasional
> use of foot controls and occasional use of hand controls; no more
> than occasional overhead reaching; frequent handling, fingering, and
> feeling; occasional climbing ramps and stairs; no climbing ladders or
> scaffolds; avoid unprotected heights, moving mechanical parts,
> never work in environments with temperature extremes; limited to
> simple tasks and simple work related decisions; no more than
> occasional interaction with supervisors, coworkers, and the public;
> time off task is accommodated by normal breaks; and sit or stand
> option that allows for a change of position at least every 30 minutes
> which is a brief positional change lasting no more than 3 minutes at a
> time where the claimant remains at the workstation during the
> positional change.

(Tr. 20.)

In making this finding, the ALJ discussed, *inter alia*, Plaintiff's subjective

complaints, the objective medical findings, the treatment records, and the opinion

evidence.  (Tr. 20-25.)  The ALJ addressed Plaintiff's complaints as follows:

> [T]he claimant [stated] that she has limited mobility.  She cannot sit
> for extended periods of time.  She cannot perform everyday task[s]
> and household duties[,] such as cooking and cleaning.  She has
> difficulty interacting with the public, and she is often secluded in her
> home . . . .
>
> At the hearing, the claimant testified that she has chronic pain.  The
> claimant stated that she is unable to stand for long periods, and she
> cannot have a social life because she has to be near a restroom.
> The claimant rated the pain as an eight in severity, on a scale of 1 to

10, with medication.  The claimant estimated that she is only able to sit for 20 to 30 minutes at one time, stand for 30 to 35 minutes at one time, and walk for 8 minutes at one time.  The claimant testified that she is only able to lift and carry 2 to 3 pounds.  The claimant stated that side effects from medication include dizziness, indigestion, and nausea.  The claimant also noted that [the] sun makes her break out in hives or bumps.

(Tr. 21; *see also* Tr. 21-22 (noting complaints of "chronic upper and mid back pain along with shoulder pain," "swelling in [the] ankles and numbness with discoloration in [the] hands, especially in cold weather," "numbness in [the] face," and neck pain).)

The ALJ also addressed Dr. Kirkendall's June 14, 2016 consultative examination, including the doctor's opinion that Plaintiff's ability to maintain a regular schedule and to appropriately deal with stress was markedly limited.  (Tr. 22-23, 403-09.)  The ALJ gave Dr. Kirkendall's opinion "great weight" to the extent it was consistent with the RFC assessment.  (Tr. 23.)  However, to the extent Dr. Kirkendall's opinion contained greater or additional restrictions than the RFC assessment, the ALJ gave it "little weight" because those restrictions were "not consistent with the medical evidence of record or supported by the record as a whole."  (*Id.*)  The ALJ stated: "For example, the record as a whole indicates that the claimant has the ability to maintain a regular schedule and she has the ability to deal with some stress.  The claimant cares for her daughter.  She is responsible for her daughter's school attendance, and she helps her daughter with her homework."  (*Id.*)

10

In addition, the ALJ addressed the Physical RFC Questionnaire completed

by Heather Gall, ARNP, in which she opined, in part, that Plaintiff was incapable

of even low stress jobs due to her chronic symptoms, that Plaintiff could sit for

less than two hours and stand/walk for less than two hours in an eight-hour

workday, that Plaintiff needed a job permitting shifting positions at will and

unscheduled breaks, and that Plaintiff could lift only ten pounds rarely.  (Tr. 23-

24, 496-99.)  The ALJ gave Ms. Gall's opinions "little weight," explaining:

> [T]here is a concern that Ms. Gall relied too heavily on the claimant's
> subjective report of her symptoms and limitations, uncritically
> accepting as true most, if not all, of what the claimant reported.
> However, the medical evidence of record does not contain the type
> of significant clinical and laboratory abnormalities one would expect if
> the claimant were in fact disabled.

(Tr. 24.)

Further, the ALJ found that Plaintiff's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, but Plaintiff's

"statements concerning the intensity, persistence and limiting effects of these

symptoms [were] not entirely consistent with the medical evidence and other

evidence in the record."  (Tr. 25.)  The ALJ explained:

> The claimant has medically determinable impairments that could
> reasonably cause pain but not to the extent alleged.  As noted
> above, the claimant has a history of systemic lupus erythematosus.
> She has fibromyalgia as well.  The claimant has complained of pain
> in the joints as well as the muscles. . . . The claimant has been
> assessed with sciatica due to displacement of lumbar intervertebral
> disc . . . .  X-rays of the sacroiliac joints showed mild sclerosis . . . .
> Upper GI endoscopy showed a LA Grade B reflux esophagitis,

medium sized hiatus hernia, and gastroparesis secondary to drug side effect . . . .

The claimant has taken appropriate medications for the alleged impairments, which weighs in the claimant's favor, but the medical records reveal that the medications have been relatively effective in managing the claimant's symptoms. For example, treatment notes indicate that Plaquenil has improved her symptoms . . . and helped with the pain . . . . Treatment notes further indicate that Hydrocodone has improved the claimant's quality of life . . . . Treatment notes indicate that the claimant exercises two to three times per week . . . .

In February 2016, the claimant had normal range of motion, normal strength, and no tenderness on musculoskeletal examination. . . .

In sum, the above [RFC] assessment is supported by the level of care the claimant has received and the results of diagnostic testing and fairly benign neurological and musculoskeletal assessments and examinations of record . . . . The claimant is a younger individual with lupus and anxiety/depression, among other impairments. Her conditions are severe; however, they would not preclude all work. The claimant has a poor work history (Exhibit B7D), and the claimant's hearing testimony was overstated especially when she indicated her young child has to do everything for her.

The claimant had indicated that she requires an assistive device; however, the record does not establish that a hand-held assistive device is medically required pursuant to SSR 96-9p.[5]

(Tr. 24-25.)

### C. Analysis

The Court finds that the ALJ's statements for discrediting Plaintiff's

subjective complaints are not supported by substantial evidence. First, the ALJ

---

[5] It appears that a cane was prescribed by Dr. Raynardo Pardo (Tr. 320), but aside from concluding that a hand-held assistive device was not medically required, the ALJ did not discuss this issue.

supports his RFC assessment and credibility determination with "the results of diagnostic testing and fairly benign neurological and musculoskeletal assessments and examinations." (Tr. 25.) However, the pertinent diagnostic testing actually supports Plaintiff's allegations of disabling symptoms. Notably, Plaintiff's lumbar MRI from December 28, 2015 shows a disc bulge at L5-S1 "with superimposed left paracentral inferiorly directed disc extrusion [that] abuts and displaces the left S1 nerve root and results in severe left lateral recess stenosis" as well as "moderate left foraminal stenosis and mild right foraminal stenosis" at the same level. (Tr. 422-23.)[6] Plaintiff's pain radiated to the left thigh, calf, and foot, and her straight leg raising test was positive on the left side. (Tr. 376, 383, 416, 420-21, 469-70, 568; see also Tr. 379, 388, 393 & 396 ("She is in severe pain [with] sciatica due [to] pressure on a nerve root. She is unable to walk less than 5 ft without severe pain and can not catch a bus. She needs transportation for doctor [appointments] and imaging studies.").)

In light of the MRI results, Plaintiff was diagnosed with a lumbar herniated disc and sciatica, and was started on Hydrocodone and Medrol dose pack. (Tr. 371, 376, 380, 387, 418, 424, 550, 555; see also Tr. 470 (noting diagnoses of low back pain, lumbar disc degeneration, lumbar spinal stenosis, lumbar radiculopathy, spondylosis with radiculopathy in the lumbar region, and lumbar

---

[6] Plaintiff also had a positive ANA and positive double-stranded DNA. (Tr. 359, 373, 549, 563, 568, 571.)

spondylolisthesis).)  Although the ALJ included the MRI results in his quote of

Plaintiff's Pre-Hearing Brief, he seemed to overlook or disregard them when

evaluating Plaintiff's subjective complaints, weighing the medical opinions, and

assessing the RFC.  This is not harmless because these MRI findings lend

support to Plaintiff's allegations of disabling pain and led to a recommendation for

following up with a neurosurgeon for the herniated disc.  (Tr. 418, 424 ("Within 1

to 2 weeks call neurosurgery office to make [an] appointment, light activity in [the]

meantime, caution prescribed pain medication can cause drowsiness.").)[7]

Further, substantial evidence in the record does not support the ALJ's

characterization of Plaintiff's "neurological and musculoskeletal assessments and

examinations" as "fairly benign."  On examination, Plaintiff exhibited bilateral

trochanteric tenderness, bilateral anserine tenderness, tenderness in both

sacroiliac joints, and "tenderness over both lateral epicondyles, anterior border of

trapezius, posterior aspect of scapular spine, both occipital tubercles, both

gluteal, both trochanteric areas anterior cervical and medial aspects of both

knees," among others, as well as painful range of motion of both shoulders with

positive impingement signs and left-sided paraspinal muscle spasms.  (Tr. 359,

361, 363, 365, 367-69, 374, 386, 417, 421, 550, 555, 558, 560-61, 563-64, 566,

---

[7] The record does not show whether Plaintiff was seen by a neurosurgeon, but she testified at the administrative hearing that "Medicaid takes forever [when] you're low income."  (Tr. 48.)  The record demonstrates that Plaintiff continued pursuing regular treatment for her conditions, which undermines the ALJ's statement that Plaintiff's "level of care" somehow supported the RFC assessment.

569, 571-72.)  On September 9, 2016, Plaintiff had antalgic gait, lumbar

tenderness, a positive Spurling test on the left side, a positive slump test on the

left side, and a positive straight leg raising test of the left lower extremity.  (Tr.

470.)

Plaintiff consistently complained to her medical providers of generalized

aches and pains in her joints and muscles; chronic pain in her lower back, hip,

shoulders, neck, and legs; joint swelling; numbness and tingling in her back and

legs; and fatigue.  (*See* Tr. 359, 361, 363, 365, 369, 373, 385, 393, 416-17, 469,

549, 552, 554, 557, 560, 563, 565, 568; *see also* Tr. 386 & 469 (reporting a pain

level of 7 on a scale of 0 to 10), Tr. 451 (reporting a pain level of 8 on a scale of 0

to 10).)[8]  The medical records reflect that Plaintiff's back pain was worse with

prolonged standing, walking, sitting, bending, and daily activities.  (Tr. 361, 363,

365, 367, 369, 376, 383, 416, 420, 469, 549.)  Plaintiff was prescribed a

compound pain creme and a number of medications, such as Hydrocodone,

Plaquenil, Naproxen, Celebrex, Effexor, Gabapentin, Tramadol, Medrol dose

pack, and muscle relaxants.[9]  (Tr. 360-61, 366, 369, 371, 549, 563.)  The side

---

[8] The ALJ cited the normal examination findings from Plaintiff's Emergency
Department visit on February 9, 2016 in support of the RFC assessment.  (Tr. 25.)
However, on that day, Plaintiff sought treatment for an upper respiratory infection rather
than for her chronic conditions.  (Tr. 410-13.)

[9] The ALJ stated that Plaquenil has improved the symptoms of Plaintiff's lupus
and Hydrocodone has improved her quality of life, which is supported by the record.
(Tr. 24-25, 363, 365, 367, 369, 373, 557.)  However, even with her medications, Plaintiff
experienced significant pain and morning stiffness, and had positive examination
findings supporting her allegations of disabling symptoms.  (Tr. 363, 365, 367, 369,

effects from these medications included sleepiness, nausea, drowsiness, indigestion, and bloating. (Tr. 49, 54, 496, 565, 576.)

Further, the record reflects that Plaintiff had difficulty performing her daily activities due to her chronic pain and other symptoms. (*See* Tr. 405, 407-08, 565.) As such, she regularly relied on her friends and/or her eight-year-old daughter to help with the household chores. (*See* Tr. 44, 55-57, 407-08.) Although the ALJ found Plaintiff's hearing testimony to be "overstated . . . when she indicated [that] her young child ha[d] to do everything for her" (Tr. 25), the record shows that Plaintiff needed assistance with the household chores and this assistance typically came from her friends, but also from her daughter (Tr. 310, 320, 322, 325, 328). While Plaintiff was able to perform very limited household chores and help her daughter with her homework, the performance of such activities is not necessarily inconsistent with allegations of disability. *See, e.g.,* *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (per curiam) (reversing and remanding the case to the Commissioner for lack of substantial evidence to support the finding that the claimant had no severe impairment, even though the

---

373, 469, 549, 554, 557, & 560 ("[Patient] has tried multiple analgesics, NSAIDs, muscle relaxants and topical analgesics cream but nothing has been effective.").) The relief from Hydrocodone was temporary, necessitating a monthly refill of this high potency narcotic medication (60 tabs for 30 days of Hydrocodone 10/325 mg). (*See* Tr. 361, 373, 549, 552, 554-55, 557-58, 560, 563-66, 569.) Plaintiff also received epidural steroid injections with "only minimal and transient relief of her symptoms." (Tr. 469; *see also* Tr. 361; *cf.* Tr. 470 ("There's persistent axial lumbar pain most likely from facet arthropathy. We therefore recommend proceeding with a series of prognostic medial branch blocks to confirm the presence of facet arthropathy pain prior to recommending radiofrequency neural ablation.").)

claimant testified that she performed housework for herself and her husband, accomplished other light duties in the home, and "was able to read, watch television, embroider, attend church, and drive an automobile short distances"); *White v. Barnhart*, 340 F. Supp. 2d 1283, 1286 (N.D. Ala. 2004) (holding that substantial evidence did not support the decision denying disability benefits, even though the claimant reported that she took care of her own personal hygiene, cooked, did housework with breaks, helped her daughter with homework, visited her mother, socialized with friends sometimes, and, on a good day, drove her husband to and from work, but needed help with grocery shopping, and could sit, stand, or walk for short periods of time).[10]

Based on the foregoing, the ALJ's credibility determination is not supported by substantial evidence.[11]  In light of this conclusion and the possible change in the RFC assessment, the undersigned finds it unnecessary to address Plaintiff's remaining arguments.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th

---

[10] The ALJ correctly noted that two of the treatment notes indicated that Plaintiff exercised two to three times a week.  (Tr. 389, 542.)

[11] The ALJ also noted in his decision that Plaintiff had "a poor work history" (Tr. 25, 299), without considering her legal history about which Plaintiff testified at the hearing.  (*See* Tr. 43 ("I had a situation where, with my divorce, me and my ex-husband had domestic violence.  So it was hard to be gainful[ly] employ[ed] . . . . And when you have a violent charge, it's hard to . . . regain employment."); *see also* Tr. 405 ("The claimant explained that she was previously in a domestic violent relationship.  The claimant stated that she worries that her ex will find them at this time. . . . The claimant stated that she was arrested in 2010 and charged with domestic battery. The claimant stated that she spent 8 months in jail in 2009.  The claimant stated that she was arrested and charged with domestic battery and was placed on probation.").)

Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at *3 (M.D. Fla. Apr. 18, 2008); *see also Demenech v. Sec'y of the Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam).  However, on remand, the ALJ is directed to re-evaluate the opinions of Dr. Kirkendall and Ms. Gall.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), with instructions to the ALJ to: (a) reconsider Plaintiff's subjective complaints and the opinions of Dr. Kirkendall and Ms. Gall; (b) re-evaluate Plaintiff's RFC assessment, if necessary; and (c) conduct any further proceedings deemed appropriate.

2.      The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.      In the event that benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in *In re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) & 1383(d)(2)*, Case No.: 6:12-mc-124-Orl-22 (M.D. Fla. Nov. 13, 2012).  This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.

**DONE AND ORDERED** at Jacksonville, Florida, on September 5, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record